UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Pamela Dittmar,<br><br>      Plaintiff<br><br>v.<br><br>City of North Las Vegas,<br><br>      Defendant | Case No.: 2:17-cv-02916-JAD-BNW<br><br>**Order Granting in Part and Denying in Part Motions for Summary Judgment**<br><br>[ECF Nos. 88, 95] |

      Plaintiff Pamela Dittmar, a 17-year former employee of defendant City of North Las Vegas, sues the city for retaliatory termination and discrimination on the basis of sex. According to Dittmar, following NLV Mayor John Lee's April 2013 election, she began to face a series of sexist indignities and adverse employment actions in an apparent effort to oust her from her job—culminating in her August 2016 firing.[1] The city contends that the action it took against Dittmar had nothing to do with her sex and everything to do with her declining performance as an employee in a rapidly changing environment.[2] The parties now cross-move for summary judgment on all claims.[3] Because Dittmar provides no analysis relevant to her claims in her motion, I deny it. The city has shown that Dittmar's claims for sex discrimination; hostile work environment; negligent hiring, supervision, or retention (negligence); and intentional infliction of

---

[1] ECF No. 25 (first-amended complaint); ECF No. 104 (summary-judgment response brief).

[2] ECF No. 88 (summary-judgment motion); ECF No. 113 (summary-judgment reply brief).

[3] Dittmar's motion is styled as a "motion for partial summary judgment." ECF No. 95. While the motion does not explicitly state that Dittmar seeks judgment as a matter of law on all five of her claims, its contents—primarily Sections IV(B)(1)–(5) of the filing—indicate that she does. *Id.* at 9–11. I find both parties' motions suitable for resolution without oral argument. *See* L.R. 78-1.

emotional distress (IIED) lack factual support, so I grant its motion as to those claims. But because I find that a reasonable jury could decide Dittmar's retaliation claim either way, that claim must proceed to trial. First, however, I refer this case to the magistrate judge for a mandatory settlement conference.

## Discussion

### I. Summary-judgment standard

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[4] "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."[5] A fact is material if it could affect the outcome of the case.[6]

On summary judgment, the court must view all facts and draw all inferences in the light most favorable to the nonmoving party.[7] So the parties' burdens on an issue at trial are critical. When the party moving for summary judgment would bear the burden of proof, "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[8] If it does, the burden shifts to the nonmoving party, who "must present

---

[4] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). The court's ability to grant summary judgment on certain issues or elements is inherent in Federal Rule of Civil Procedure (FRCP) 56. *See* Fed. R. Civ. P. 56(a).

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[6] *Id.* at 249.

[7] *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[8] *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

significant probative evidence tending to support its claim or defense."[9] But when the moving party does not bear the burden of proof on the dispositive issue at trial, it is not required to produce evidence to negate the opponent's claim—its burden is merely to point out the evidence showing the absence of a genuine material factual issue.[10] The movant need only defeat one element of a claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[11] "When simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of"—and against—"both motions before ruling on each of them."[12]

## II. Dittmar's motion for partial summary judgment {ECF No. 95]

FRCP 56 requires a summary-judgment movant to "identify[] each claim or defense . . . on which summary judgment is sought," and show that no genuine disputes of material fact exist.[13] To show that a fact "cannot be . . . genuinely disputed," the movant "*must* support the assertion" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other

---

[9] *Id.*

[10] *Celotex*, 477 U.S. at 323.

[11] *Id.* at 322.

[12] *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (citing *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001)).

[13] Fed. R. Civ. P. 56(a).

3

materials."[14] And this district's local rules require a "statement setting forth each fact material to the disposition of the motion" with proper citation to the record evidence.[15]

Puzzlingly, Dittmar's summary-judgment motion most heavily addresses (1) whether the deposition testimony of the former NLV City Manager Dr. Qiong Liu is "binding" on the city under Federal Rule of Evidence (FRE) 801(d)(2)'s opposing-party-statement hearsay exclusion and (2) whether and when *ex parte* communications between a plaintiff's attorney and a defendant's former employee are permitted.[16] These issues are largely inapposite to the questions posed by the summary-judgment analysis, which requires Dittmar to show that she is entitled to judgment as a matter of law by analyzing the facts and evidence in the record. But the final three pages of her motion, in which she presents the elements of each of her claims, contain no analysis and no citation to evidence whatsoever.[17] This submission is insufficient to meet her initial burden on summary judgment on any of her claims, so I deny Dittmar's motion in its entirety. To the limited extent she raises new arguments in her reply brief,[18] I decline to consider them.[19]

---

[14] *Id.* at 56(c)(1) (emphasis added).

[15] L.R. 56-1.

[16] The discussion about *ex parte* contacts is especially strange because Dittmar concedes that "there is no issue of *ex parte* communication because Dr. Liu was formally deposed in this case." ECF No. 95 at 5.

[17] *Id.* at 8–11.

[18] ECF No. 114.

[19] *See Vasquez v. Rackauckas*, 734 F.3d 1025, 1054 (9th Cir. 2013) (noting that courts generally "do not consider issues raised for the first time in reply briefs"); *cf. El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1041 (9th Cir. 2003) (recognizing that, under Ninth Circuit precedent, district courts may consider new evidence in reply briefs if the adverse party has had an opportunity to respond).

### III.  The city's motion for summary judgment [ECF No. 88]

Based on the record before me, I find that NLV has established that no genuine material factual disputes exist as to five of Dittmar's six claims or that those claims fail as a matter of law. But Dittmar's retaliation claim survives summary judgment because there are genuine disputes of material fact regarding the adverse actions the city took against her and whether those actions were taken in response to her sexual-harassment and hostile-work-environment complaints. So I grant NLV summary judgment on all but that claim.

#### A.  Dittmar cannot state a sex-discrimination claim under federal or state law.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discharge any individual[] or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." or "to limit, segregate, or classify his employees . . . in any way [that] would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect [her] status as an employee, because of" her sex.[20]  To file a civil suit for employment discrimination under federal and state law, a plaintiff must first timely file an employment-discrimination charge with the federal Equal Employment Opportunity Commission (EEOC) or equivalent state agency.[21]  The Supreme Court has instructed that the charge-filing deadline demands "strict

---

[20] 42 U.S.C. § 2000e–2(a).

[21] *Lewis v. City of Chicago, Ill.*, 560 U.S. 205, 210 (2010); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002); *see Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005). Because the federal-law and state-law employment-discrimination statutes are materially similar, I primarily discuss the federal law (Title VII) in this section, but my analysis applies with equal force to Dittmar's federal and state claims for sex discrimination. *See Pope*, 114 P.3d at 280.

adherence."[22] In Nevada, that deadline is 300 days after the allegedly unlawful employment practice.[23]

Although the parties dispute when exactly Dittmar filed her first charge with the Nevada Equal Rights Commission (NERC), that disagreement is irrelevant because her filing was untimely regardless of which side is correct. The two incidents on which Dittmar's sex-discrimination claim is based took place in October 2013 and September 2014. Dittmar claims she filed her charge on July 29, 2015—at least 636 days after the 2013 incident and 322 days after the 2014 one. NLV, citing the date listed on Dittmar's charge itself,[24] asserts that it was filed on December 31, 2015—at least 791 days after the first incident and 477 days after the second. Even under the version of the facts most favorable to Dittmar, her sex-discrimination claims are barred by the statutes' filing deadlines.

In an effort to excuse this untimeliness, Dittmar first argues that her claims must've been timely because NERC issued her a right-to-sue letter and didn't note that her claims were at all untimely.[25] But "a right-to-sue letter enables a private suit *only* if it is issued in connection with an administrative charge that is timely filed."[26] NERC's failure to notice the tardiness of Dittmar's claims does not render them timely. She also asserts that the continuing-violation doctrine shields her claims from the charge-filing deadline.[27] But that doctrine hasn't applied to

---

[22] *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980); *see* 42 U.S.C. § 2000e-5(e)(1); Nev. Rev. Stat. § 233.160(1)(b).

[23] *See* 42 U.S.C. § 2000e-5(e)(1); Nev. Rev. Stat. § 233.160(1)(b).

[24] ECF No. 88-34 at 2–3.

[25] ECF No. 104 at 20.

[26] *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 214 (2d Cir. 2006) (emphasis added).

[27] ECF No. 104 at 20.

6

discrete-act-discrimination claims since the Supreme Court's 2002 decision in *National Railroad Passenger Corp. v. Morgan*.[28] And even if it did still apply, the doctrine requires at least one of the incidents that underlies the plaintiff's claim to have occurred within the 300-day window.[29] Here, neither of Dittmar's alleged incidents did. I thus grant summary judgment for the city on both the federal-law and state-law sex-discrimination claims.

### B.   Dittmar cannot state a hostile-work-environment claim.

"Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult" based on protected-class status.[30] To prevail on her hostile-work-environment claim, Dittmar must show that, based on totality of the circumstances, she faced (1) unwelcome verbal or physical conduct (2) because of her sex (3) that was both subjectively and objectively so "severe or pervasive to alter the conditions of her employment and create an abusive work environment."[31] The "frequency, severity[,] and level of interference with work performance [are] among the factors particularly relevant to the inquiry."[32] Mere offensive utterances, "simple teasing, . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."[33] The objective prong of the third element is judged from the

---

[28] *See* 536 U.S. at 114–15.

[29] *Id.*

[30] *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986) (citation omitted).

[31] *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013); *Manatt v. Bank of Am.*, 339 F.3d 792, 798 (9th Cir. 2003); *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000) (cleaned up).

[32] *Brooks*, 229 F.3d at 923 (citation omitted).

[33] *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998) (cleaned up).

perspective of a "reasonable victim."[34]  For purposes of the objective prong, "[b]ecause only the employer can change the terms and conditions of employment, an isolated incident of harassment by a co-worker will rarely (if ever) give rise to a reasonable fear that . . . harassment has become a permanent feature of the employment relationship."[35]

Dittmar describes unwelcome and unprofessional conduct by NLV's mayor and his employees, including (a) the mayor asking her questions about her personal life and telling her he could hire "another pretty face" to replace her, (b) the city manager referring to her as "Lips" behind her back, and (c) her direct supervisor's repeated alcohol-related overtures.[36]  But even considered in their totality, these actions, however inappropriate, do not amount to a hostile work environment.  By comparison, the Ninth Circuit has found a hostile work environment when an employee's coworkers and supervisors hurled epithets at him constantly for over a decade, but it refused to find a hostile work environment even when a coworker forcibly and sexually touched his female coworkers when each of the victims was unaware of the other assaults.[37]  Assuming without deciding that the unwelcome commentary was related to Dittmar's sex, the infrequency, temporal isolation, and low severity of each comment preclude me from finding that they altered the conditions of Dittmar's employment.  Dittmar cannot establish that offhand comments made by different individuals months or years apart—some of which Dittmar did not personally hear— were so common, pervasive, or severe as to become a permanent feature of her employment with the city.  So I grant NLV summary judgment on Dittmar's hostile-work-environment claim.

---

[34] *Brooks*, 229 F.3d at 924.

[35] *Id.*

[36] ECF No. 88-34 at 2–3; ECF No. 95-2 at 56.  The city manager denied using "Lips" as a nickname for Dittmar.  *See* ECF No. 88-4 at 14–15.

[37] *Brooks*, 229 F.3d at 921–22; *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1115 (9th Cir. 2004).

8

### C. Dittmar's IIED and negligence claims fail.

To prevail on a claim for IIED in Nevada, Dittmar must prove, among other elements, extreme and outrageous conduct and severe emotional distress.[38] This requires showing that the defendant took actions that were not just "inconsiderate and unkind," rather they must have been "outside all possible bounds of decency and . . . regarded as utterly intolerable in a civilized community."[39] And establishing IIED requires "objectively verifiable indicia of the severity of [Dittmar's] emotional distress."[40] Because Dittmar has failed to present evidence that creates a genuine issue of fact about whether she has suffered severe or extreme emotional distress, and because there is no indication that she was subjected to outrageous conduct wholly unacceptable to society, I grant summary judgment in the city's favor on this claim.

In Nevada, "[t]he tort of negligent hiring imposes a general duty on the employer to conduct a reasonable background check on a potential employee to ensure that the employee is fit for the position."[41] "An employer breaches this duty when it hires an employee even though the employer knew, or should have known, of that employee's dangerous propensities."[42] Liability attaches when the employer hires a person despite having "reason to believe that the person, by reason of some attribute of character or prior conduct, would create an undue risk of harm to others in carrying out his or her employment responsibilities."[43]

---

[38] *Miller v. Jones*, 970 P.2d 517, 577 (Nev. 1998) (citing *Posadas v. City of Reno*, 851 P.2d 438, 444 (Nev. 1993)).

[39] *See Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (1998).

[40] *Miller*, 970 P.2d at 577.

[41] *Burnett v. C.B.A. Sec. Serv., Inc.*, 820 P.2d 750, 752 (Nev. 1991).

[42] *Hall v. SSF, Inc.*, 930 P.2d 94, 98 (Nev. 1996)

[43] *Id.* at 99 (cleaned up). The city argues that the injury element of this claim requires physical harm. ECF No. 88 at 24–25. Seeing no indication that the Nevada Supreme Court agrees with this view, and because I find that Dittmar's negligence claims fail regardless, I need not and do

Dittmar's negligence claim concerns her direct supervisors Gregory Blackburn and Gina Gavan. According to Dittmar, NLV was aware that Blackburn was a "sexual predator" who had inappropriate "incidents" with female coworkers while he was employed by the City of Henderson, Nevada, but NLV hired him anyway.[44] And she alleges that Gavan was hired despite her lack of experience.[45] But it is undisputed that there is no evidence of any prior problematic conduct in Blackburn's case—even Dr. Liu, Dittmar's choice witness, said so at her deposition.[46] And Gavan's inexperience is not, in and of itself and absent any supporting evidence, a sign of dangerous propensity to harm. I therefore grant the city summary judgment on Dittmar's negligence claims.[47]

### D. Dittmar's retaliatory firing claim raises genuine disputes of material fact.

To establish a prima facie case of retaliation, Dittmar must show that (1) she engaged in a protected activity and (2) NLV took an adverse employment action against her (3) because of

---

not decide whether the common-law tort of negligent hiring, supervision, or retention requires physical injury to the plaintiff. *But see Hall v. Raley's*, 2010 WL 55332, at *9 (D. Nev. Jan. 6, 2010) (predicting that physical harm is necessary for an employment-negligence claim).

[44] ECF No. 25 at ¶ 98; ECF No. 106 at ¶¶ 5–6, 28, 59, 61.

[45] In her response to the city's summary-judgment motion, Dittmar appears to argue that Gavan did not supervise Dittmar properly, so the city is liable for negligent supervision. ECF No. 104 at 19–20. But a properly brought negligent-supervision claim would be premised on the city's negligent supervision of Gavan—not Gavan's inexperienced supervision of Dittmar.

[46] ECF No. 88-7 at 5–6 (describing Blackburn's background check).

[47] The city presents compelling arguments that Dittmar's common-law claims for negligence and IIED are preempted by Nevada's employment-discrimination statutes, Nev. Rev. Stat. § 613.330 *et seq.*, which it argues provide the sole and exclusive remedy for allegedly unlawful employment practices, and under which Dittmar brings numerous additional claims. ECF No. 88 at 24–28. But the Nevada Supreme Court has not directly addressed the question in the sex-discrimination context. *But see D'Angelo v. Gardner*, 819 P.2d 206, 217 n. 10 (Nev. 1991); *Sands Regent v. Valgardson*, 777 P.2d 898, 900 (Nev. 1989); *but see also Jackson v. Universal Health Servs., Inc.*, 2014 WL 4635873, at *4 (D. Nev. Sept. 15, 2014). Because I determine that the facts of this case vitiate Dittmar's common-law claims, I need not and thus decline to address the city's preemption arguments.

that protected activity.[48] A complaint based on an employee's "reasonable belief that the employer has engaged in an unlawful employment practice" under Title VII constitutes protected activity.[49] As to the third element, the employer's "desire to retaliate" must be the "but-for cause of the challenged employment action," but "causation . . . may be inferred from the proximity in time between the protected action and the allegedly retaliatory employment decision."[50] If she establishes a prima facie case, the burden shifts to the city to show nonretaliatory reasons for firing her.[51] Dittmar can still prevail if she proves those reasons were pretextual.[52]

Dittmar alleges that her supervisors began to treat her worse and eventually fired her as a result of her sexual-harassment and hostile-work-environment complaints about the mayor, the city manager, and her own supervisors. The undisputed evidence shows that she engaged in protected activity and that NLV took adverse employment actions against her, establishing the first and second elements of a retaliation claim: Dittmar complained to multiple people and entities, including formally to the city's human-resources department and NERC, about what she described as sex discrimination and harassment; she was later disciplined and fired.

The only remaining issue is whether the city took those adverse employment actions *because* of Dittmar's protected complaints—which the parties vehemently dispute. Following the first instances of alleged sexual harassment in 2013 and 2014, Dittmar complained to her union representative, who advised her to avoid the formal grievance process, indicating that he'd

---

[48] *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034–35 (9th Cir. 2006).

[49] *Freitag v. Ayers*, 468 F.3d 528, 541–42 (9th Cir. 2006), cert. denied, 549 U.S. 1323 (2007); *cf. Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009).

[50] *Cornwell*, 439 F.3d at 1035 (cleaned up).

[51] *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008).

[52] *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

involve himself in resolving it.[53]  In early 2015, Dittmar's existing position was removed from the union contract; her salary was decreased; and she was given a new, unfamiliar position directly supervised by Blackburn that had demanding requirements, such as time-logging every fifteen minutes.[54]  She then filed official complaints against Blackburn and the mayor with the city's human-resources department, which declined to investigate and instead referred the issues to an external investigator.[55]  The outside investigation into Blackburn concluded in late June of 2015—finding the harassment allegations undersubstantiated[56]—after which Dittmar filed with NERC an unlawful-employment-practice charge against the city in either July or December of 2015.[57]  In early 2016, around the time she was disciplined for alleged performance issues, Dittmar filed a hostile-work-environment complaint against Gavan with the city's human-resources department.[58]  Because I find that these factual issues present a genuine dispute about causation that a jury could resolve either way, Dittmar's retaliation claim must proceed to trial.  The city's request for summary judgment on that claim is therefore denied.

---

[53] The parties dispute the union representative's relationship with the city, given that he has a city-provided email address.  *See, e.g.*, ECF No. 104 at 4; ECF No. 113 at 9.  It is thus unclear at this stage of the proceedings whether his knowledge of Dittmar's complaints and the conversations he may have had informally with the city's agents can be imputed to the city.

[54] ECF No. 95-2 at 64–65, 72; ECF No. 104 at 4–5.

[55] ECF No. 105-1 at 2.  The parties dispute the mayor and city manager's roles in the adverse employment actions taken against Dittmar.  ECF No. 88 at 5 n.2; ECF No. 95-2 at 65.

[56] ECF No. 88-17.

[57] As discussed in Section III(A), *supra*, the parties dispute when Dittmar's charges were filed with NERC.  While the issue is inapposite for purposes of the filing deadlines, *see id.*, it is relevant to the issue of causation via temporal proximity in the context of retaliation.  *See Cornwell*, 439 F.3d at 1035.

[58] The parties dispute whether Dittmar was disciplined and placed on an improvement plan before or after the informal and formal complaints against Gavan.  ECF No. 104 at 4–6; ECF No. 113 at 13; *see* ECF No. 95-2 at 63–65.

**Conclusion**

IT IS THEREFORE ORDERED that the City of North Las Vegas's motion for summary judgment **[ECF No. 88] is GRANTED** on Pamela Dittmar's claims for sex discrimination; hostile work environment; negligent hiring, supervision, or retention; and intentional infliction of emotional distress.  It is **DENIED** as to Dittmar's retaliation claim, which proceeds to trial.

IT IS FURTHER ORDERED that Dittmar's motion for partial summary judgment **[ECF No. 95] is DENIED**.

IT IS FURTHER ORDERED that **this case is REFERRED to the magistrate judge for a MANDATORY SETTLEMENT CONFERENCE**.  The parties' obligation to file their joint pretrial order is STAYED until 10 days after that settlement conference.

_____
U.S. District Judge Jennifer A. Dorsey
February 24, 2022